UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>SHAUN KNOX,<br><br>　　　　　　　Defendant. | 3:09-CR-30066-RAL<br><br>OPINION AND ORDER ON MOTION FOR COMPASSIONATE RELEASE |

A federal grand jury indicted Shaun Knox (Knox) on one count of sexual abuse in violation of 18 U.S.C. §§ 1153, 2242, and 2246(2)(A). Doc. 1. This Court conducted a jury trial in December of 2009, and the jury found Knox guilty of sexual abuse. Docs. 58, 59. On March 8, 2010, this Court held a sentencing hearing in Knox's case and imposed a custody sentence of 151 months to be followed by five years of supervised release. Docs. 66 at 2; 67 at 2–3; 78 at 30.

Knox is currently incarcerated at United States Penitentiary Tucson (USP Tucson) and has filed a pro se motion for compassionate release, citing the global COVID-19 pandemic and family circumstances as justification. Doc. 92. The Government has responded in opposition. Doc. 100. This Court has considered Knox's motion, and for the reasons stated herein, denies his motion at this time.

I.　**Background**

Knox's conviction resulted from a sexual assault he perpetrated on an incapacitated victim. PSR at ¶¶ 7–10. The facts relating to the incident are disturbing, and the crime had a severe, lasting effect on the victim. See PSR at ¶ 16.

1

On May 23, 2009, Knox attended a party at a residence in Mission, South Dakota. PSR at ¶ 7. Michelle Boyd also attended the party. PSR at ¶ 7. At the party, Boyd and other party guests consumed alcohol; Boyd became highly intoxicated. PSR at ¶ 8. Boyd began to feel ill and went to a bedroom, where she later passed out. PSR at ¶ 9. Prior to Boyd passing out, she was laying on her side on the bed and was fully clothed. PSR at ¶ 9. Later, she awoke lying on her back with Knox on top of her sexually assaulting her. PSR at ¶ 9. As Knox assaulted her, he asked her, "Do you like that?" PSR at ¶ 9. Boyd told Knox to stop multiple times and to "get off." PSR at ¶ 9. Knox did not stop the sexual assault. PSR at ¶ 9. At some point during the assault, Boyd passed out again. PSR at ¶ 9. Later, Boyd woke up on the bedroom floor by the closet; she was naked from the waist down. PSR at ¶ 10. Roya Spotted Tail found the victim in this position, and Boyd told Spotted Tail that Knox raped her. PSR at ¶ 10.

Under the sentencing guidelines, Knox's total offense level for this offense was 32 and Knox was in criminal history category I. PSR at ¶ 33; Doc. 78 at 29. This meant that Knox's advisory guideline range was 121 months to 151 months custody. Doc. 78 at 29. This Court held a sentencing hearing in Knox's case on March 8, 2010, and heard arguments on objections to the presentence investigation report (PSR). Docs. 66, 78. Ultimately, the court amended the PSR based on the objections. Doc. 78. After hearing argument from both parties as to the appropriate sentence and hearing from Knox himself, this Court sentenced Knox to 151 months custody with a five-year term of supervised release. Docs. 78 at 30; 67 at 2–3. Knox has been in custody since July 1, 2009, and is currently incarcerated at USP Tucson. Docs. 6, 8; PSR at ¶ 1; see also Find an Inmate, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited Sept. 24, 2020).

In early 2020, a novel coronavirus, COVID-19, quickly spread across the United States and infiltrated correctional institutions. As a new virus, COVID-19 has presented somewhat of a mystery to medical professionals and society in general. Some people can contract the virus and be completely asymptomatic, while other people develop complications and die from the illness. The Centers for Disease Control and Prevention (CDC) have identified certain underlying health conditions that put individuals at higher risk for a severe form of the illness if they contract the disease. Among those at higher risk are individuals with cancer, chronic kidney disease, obesity, serious heart conditions, sickle cell disease, and Type 2 diabetes. See People with Certain Medical Conditions, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last visited Sept. 23, 2020).

Knox maintains that he is the sole caregiver to his 70-year old mother who suffers from heart failure and lives alone. Doc. 92 at 2. Knox has now filed a motion for compassionate release with this Court based on those circumstances and his inability to practice social distancing in the correctional facility setting during the COVID-19 pandemic. Doc. 92 at 1–2.

II.  **Legal Standard**

Generally, a "court may not modify a term of imprisonment once it has been imposed," except in a few, narrow circumstances. 18 U.S.C. § 3582(c). The compassionate release statute as amended by the First Step Act of 2018 provides one of those narrow avenues through which a sentence may be modified. The compassionate release statute provides in pertinent part that:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or

3

>the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment ... after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
>(i)  extraordinary and compelling reasons warrant such a reduction; ...
>
>and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A). "The district court has broad discretion in determining whether proffered circumstances warrant a reduction in sentence." United States v. Loggins, 966 F.3d 891, (8th Cir. 2020). Ultimately, the defendant bears the burden of establishing that a sentence reduction is warranted. See United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016).

### III. Discussion

Knox claims that he requested compassionate release from the warden of his institution on March 26, 2020. Doc. 93 at ¶ 2. There is no evidence in the record showing that he submitted such a request. But the Court concludes that it does not need to opine on whether Knox exhausted his administrative remedies because even if the administrative exhaustion requirements have been met and Knox's request may be considered, Knox is still not eligible for compassionate release under the "extraordinary and compelling reasons" provision.

In determining whether compassionate release is justified, this Court must consider the sentencing factors in 18 U.S.C. § 3553(a), determine whether "extraordinary and compelling reasons" warrant a sentence reduction, and evaluate whether a sentence reduction is consistent with the Sentencing Commission's applicable policy statements. See 18 U.S.C. § 3582(c). The sentencing factors found in 18 U.S.C. § 3553(a) instruct this Court to consider the applicable guidelines issued by the Sentencing Commission; "the nature and circumstances of the offense and

4

the history and characteristics of the defendant;" the need for the sentence "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" to adequately deter criminal conduct, to protect the public; and "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a). This Court also should consider the need to avoid unwarranted sentence disparities among similarly situated defendants. 18 U.S.C. § 3553(a)(6).

In conducting its analysis on compassionate release motions, this Court begins by considering the applicable § 3553(a) sentencing factors. Before his presentence investigation report was amended by this Court, Knox received a two-level enhancement to his base offense level because Knox sexually assaulted a vulnerable victim and a two-level enhancement for obstruction of justice for tampering with a witness before trial. PSR at ¶ 24. With these enhancements, the disturbing facts of the sexual assault, and Knox's criminal history points, Knox's offense level was 34, which put his guideline range at 151-188 months in custody. PSR at ¶ 54. At sentencing this Court sustained Knox's objection to the obstruction of justice enhancement. Doc. 78 at 29–30. This Court's ruling reduced Knox's offense level from 34 to 32. Doc. 78 at 29. Knox's amended offense level and his criminal history points resulted in a 121-151 month guideline range under the sentencing guidelines. A guideline range sentence like the one imposed was necessary for several reasons. First, a lengthy sentence adequately reflected the seriousness of the offense and provided just punishment. Second, the type of criminal conduct at issue here requires a powerful deterrent, and the 151-month sentence was designed to protect the public and to provide Knox with substance abuse treatment in an effective manner. Doc. 67 at 2. Overall, the 151-month sentence was sufficient to achieve the § 3553(a) sentencing factors, but it was not greater than necessary.

Knox has now served approximately 87% of his full sentence and has served approximately 90% of his "statutory term." Doc. 96 at 172. Since he entered BOP custody, Knox, now age 31, has completed several education courses, including typing and electrical trade programs, and received his GED. Doc. 96 at 165–66. He has over thirty discipline reports, and several of his disciplinary incidents involve indecent exposure or engaging in sexual acts. Doc. 96 at 153–64; see Docs. 98, 99.

This Court next determines whether "extraordinary and compelling" reasons exist to modify a sentence. Congress has directed the Sentencing Commission to describe and provide examples of what constitutes "extraordinary and compelling" reasons with respect to the compassionate release statute. 28 U.S.C. 994(t). The Sentencing Commission provided such examples in the commentary to United States Sentencing Guideline 1B1.13. Those reasons include the defendant's terminal illness or debilitating physical or mental condition, the defendant's age in combination with the proportion of his sentence served, and certain family circumstances. U.S.S.G. § 1B1.13 cmt. n.1(A)–(C). The Sentencing Commission also included a "catch all" provision which allows one to find "extraordinary and compelling" reasons other than those specifically listed "[a]s determined by the Director of the Bureau of Prisons." U.S.S.G. § 1B1.13 cmt. n.1(D). However, since the First Step Act was passed, the Sentencing Commission has not updated its policy statement because it has not had a quorum. As a result, district courts have questioned whether the policy statement still applies and whether courts may consider other "extraordinary and compelling" reasons under the "catch all" provision. See United States v. Mondaca, No. 89-CR-0655 DMS, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (discussing the discord among district courts); United States v. Spears, No. 98-0208-SI-22, 2019 WL 5190877, at *3 (D. Or. Oct. 15, 2019) (same); United States v. Brown, 411 F. Supp. 3d 446, 449–50 (S.D.

Iowa 2019) (same). Many district courts have determined that the discretion given to the Director of the BOP by the Sentencing Commission extends to federal judges and allows them to consider "extraordinary and compelling reason[s] other than" those specifically described. United States v. Condon, No. 3:12-cr-00091-10, 2020 WL 2115807, at *3 (D.N.D. May 4, 2020) (listing cases that found federal judges may apply the "catch all" provision of U.S.S.G. § 1B1.13 comment note 1(D)).

Knox appears to primarily argue that he qualifies for compassionate release under the family circumstance provision of U.S.S.G. § 1B1.13 comment note 1(C). Comment note 1(C) provides in relevant part that "extraordinary and compelling" reasons may exist if there is the "death or incapacitation of the caregiver of the defendant's minor child or minor children" or the "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). However, Knox does not claim that the caregiver of his minor children died or is incapacitated or that his spouse is incapacitated and that he is the only available caregiver. Rather, Knox argues that he is the sole caregiver for his aging mother, a situation not contemplated by the comment note. Doc. 92 at 2. Additionally, it appears that Knox has several adult siblings who may be able to step into the role as caregiver to his mother; Knox did not present any evidence showing otherwise. PSR at ¶ 36. Therefore, Knox cannot establish "extraordinary and compelling" reasons to justify a sentence reduction under comment note 1(C).

This Court next considers Knox's circumstances under the "catch all provision" of U.S.S.G. § 1B1.13 comment note 1(D). Knox argues that his inability to practice social-distancing and other CDC guidelines during the COVID-19 pandemic establish an "extraordinary and

7

compelling" reason other than those specifically identified to justify a sentence reduction. Doc. 92 at 1–2.

The COVID-19 pandemic has impacted this country and its economy in extraordinary ways. However, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

Knox has not alleged that he suffers from any medical conditions that put him at a greater risk of severe illness if he contracts COVID-19. In the Court's review of Knox's medical records, none of his medical conditions are recognized by the CDC as significant risk factors for contracting or developing a severe illness from COVID-19. See Doc. 96. This Court cannot say to what extent Knox's life is threatened by the existence of COVID-19 in USP Tucson, especially considering that the BOP has taken precautions to protect him and his fellow inmates. See BOP Implementing Modified Operations, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/covid19_status.jsp (last visited Sept. 23, 2020). USP Tucson currently has six active inmate infections of COVID-19 and zero active COVID-19 cases among the facility's staff; one inmate and seven staff have recovered from the illness, and the facility has reported no deaths. See COVID-19, Coronavirus, Federal Bureau of Prisons https://www.bop.gov/coronavirus/ (last visited Sept. 24, 2020).

Knox has served most of his 151-month sentence for sexually assaulting a vulnerable woman who passed out from alcohol intoxication. Knox appears, to his credit, to have worked on improving himself in custody with coursework, but he appears to struggle with following the rules as evidenced by his numerous discipline reports. Overall, the original sentence was chosen with

care, considering Knox's and his community's needs and all of the other applicable sentencing factors. Despite the risks posed by COVID-19, this Court does not find "extraordinary and compelling reasons" to justify a sentence modification because such a reduction would not be sufficient to achieve the goals of sentencing.

### IV. Conclusion and Order

Therefore, it is hereby

ORDERED that Knox's motion for compassionate release, Doc. 92, is denied.

DATED this 24th day of September, 2020.

BY THE COURT:

_____
ROBERTO A. LANGE
CHIEF JUDGE